# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DIANA MCCALL, )
)
    Plaintiff, )
)
vs. )    Case No.  CIV-15-639-D
)
CAROLYN W. COLVIN, acting )
Commissioner Social Security )
Administration, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) issued a final decision denying Diana McCall's (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g).  United States District Judge Timothy D. DeGiusti referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge.  The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs, and recommends the court affirm the Commissioner's decision.

## I.    Background and administrative proceedings.

Plaintiff filed her application for disability insurance benefits on February 21, 2012, alleging she became disabled on June 1, 2007.  AR 158-60.

The Social Security Administration (SSA) denied Plaintiff's claim, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. *Id*. at 25-61. In his December 2013 decision, the ALJ found Plaintiff was not disabled through June 30, 2012, within the Social Security Act's meaning. *Id*. at 10-20. Plaintiff now seeks review in this Court. Doc. 1.

## II.   The ALJ's findings.

Following the well-established five-step inquiry to determine whether a claimant is disabled, the ALJ found Plaintiff last met her insured status requirements on June 30, 2012, and through that date: (1) had severe "lumbar degenerative disc disease; left hip osteoarthritis; right shoulder tendonitis/bursitis; major depressive disorder, recurrent, severe; and post-traumatic stress disorder"; (2) had the residual functional capacity (RFC)[2] to perform light work with exertional and nonexertional limitations; and (3) could perform work in the national economy. AR 12-19; *see also* 20 C.F.R. § 404.1520(b)-(f); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps).

## III.   Plaintiff's claims.

In her first proposition, Plaintiff alleges the ALJ: (1) ignored her gastrointestinal impairment at step two; (2) failed to order a consultative

---

[2]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

exam to explore the impairment; and (3) erroneously gave great weight to the state agency physicians' opinions. Doc. 12, at 7-12.[3] In proposition two, Plaintiff claims the ALJ: (1) formulated Plaintiff's RFC without specific work-related limitations; (2) failed to incorporate into the RFC the state agency psychologist's opinions involving Plaintiff's "moderate" limitations; and (3) did not include all Plaintiff's limitations in his hypothetical question to the vocational expert (VE). *Id.* at 12-21. In her third proposition, Plaintiff argues the ALJ did not perform a "function-by-function assessment" of Plaintiff's RFC. *Id.* at 21. Finally, in her fourth proposition, Plaintiff alleges the ALJ: (1) improperly considered Plaintiff's pain allegations; and (2) failed to account for Plaintiff's pain in his RFC assessment. *Id.* at 22-23.[4]

## IV. Standard for review.

This Court's review is limited to whether "substantial evidence" supports the ALJ's factual findings and whether the ALJ applied "the correct legal standards." *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In

---

[3]     Citation to the parties' briefs refers to this Court's CM/ECF pagination.

[4]     The undersigned had to extract these subheadings from Plaintiff's brief, as she included no such signposts. Notably, Plaintiff's attorney also failed to include the headings in the table of contents. *See* LCvR 7.1(e).

determining whether substantial evidence exists, the court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). As the Tenth Circuit has cautioned, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Finally, the court may find an ALJ's error harmless, if "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way[.]" *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## V.    Analysis.

After reviewing Plaintiff's many allegations, the undersigned finds no grounds for reversal.

### A.    Plaintiff's first proposition.

In her first proposition, Plaintiff alleges the ALJ: (1) ignored her gastrointestinal impairment at step two; (2) failed to order a consultative exam to develop the record on her gastrointestinal impairment; and (3) erroneously gave the state agency physicians' opinions great weight. Doc. 12, at 7-12.

Relevant to the following arguments, "[Plaintiff] had to show [s]he was disabled on or before" June 30, 2012 – the date she last met her insured

status requirements. *Vititoe v. Colvin*, 549 F. App'x 723, 728 (10th Cir. 2013) (claimant had to establish on or before his date last insured he could not engage in any substantial gainful activity for a continuous twelve-month period); *see Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (holding "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status").

### 1. The ALJ's alleged failure to consider Plaintiff's gastrointestinal impairment at step two.

Step two requires the ALJ to consider whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii),(c). Plaintiff alleges "the severe impairments included physical and mental limitations, but lacking was any mention of [Plaintiff's] gastrointestinal problems." Doc. 12, at 7. The undersigned finds no grounds for reversal in this argument.

First, Plaintiff's argument is simply incorrect. At step two the ALJ discussed all the evidence, including: (1) Plaintiff's April 2012 complaint of "vague abdominal pain," her denial of diarrhea, and Dr. S.A. Chaudry's diagnosis of "history of abdominal pains but normal during examination"; and (2) Plaintiff's April 2013 complaints of diarrhea and weight loss. AR 13-14. The ALJ specifically noted Plaintiff's "8-month history of nausea and vomiting with weight loss" "did not begin until months after her date of last

5

insured of June 30, 2012." *Id.* at 14. Applying common-sense, the undersigned finds the ALJ's opinion sufficiently explained his reason for not finding Plaintiff's gastrointestinal impairment severe before June 30, 2012. *See Keyes-Zachary*, 695 F.3d at 1167 (holding an ALJ's failure to "explicitly state" his finding is not reversible error where the court, applying "common sense," can discern his finding in the opinion).

Second, any error the ALJ may have committed at step two in not specifically stating he was finding Plaintiff's gastrointestinal impairment non-severe through June 30, 2012, is harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

So, the court should reject Plaintiff's request for reversal on this ground.

### 2. The ALJ's failure to order a consultative examination to develop the record on Plaintiff's gastrointestinal impairment.

Plaintiff next complains the ALJ erred in not ordering a consultative examination in order to fully develop the record regarding Plaintiff's

gastrointestinal impairment. Doc. 12, at 9-10. Again, the undersigned disagrees.

In explaining the duty placed upon an ALJ regarding record development, the Tenth Circuit has emphasized the Commissioner "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *see also Duncan v. Colvin*, 608 F. App'x 566, 570 (10th Cir. 2015). Considering the relevant regulation's older version, the Tenth Circuit held a consultative examination is often, but not always, required in the following circumstances: (1) "there is a direct conflict in the medical evidence requiring resolution"; (2) "the medical evidence in the record is inconclusive"; or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166 (citing prior version of 20 C.F.R. § 404.1519a).

In its current form, § 404.1519a prescribes:

(b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b).

Under these guidelines, Plaintiff's case warranted no consultative examination. Plaintiff alleges no evidence was missing or otherwise unavailable and the relevant evidence was not inconsistent or inconclusive. The record establishes Plaintiff's impairment did not develop until eight months prior to April 2013 – or approximately August 2012. AR 406 (physician's April 25, 2013 note stating Plaintiff presented with "weight loss, vomiting, and nausea for 8 months"); 408 (medical notation dated March 8, 2013, stating Plaintiff had lost "80 pounds in 7 mos" due to diarrhea). So, the undersigned finds substantial evidence supports the ALJ's decision not to order a consultative examination. *See, e.g., Welch v. Colvin*, 566 F. App'x 691, 695 (10th Cir. 2014) (holding no error in the ALJ's failure to order a consultative examination where current medical record was "sufficient to make a disability determination" and claimant's "date last insured" had

already expired so a consultative examination would not have "materially assisted" in the decision).

### 3. The ALJ's alleged error in giving great weight to the state agency physicians' opinions.

Plaintiff further alleges the ALJ impermissibly gave great weight to the state agency physicians' opinions. First, Plaintiff argues the physicians failed to consider evidence, pre-dating their opinions, involving Plaintiff's gastrointestinal impairment. Doc. 12, at 8, 10. Second, Plaintiff claims the physicians wrote their opinions before the "major changes" to Plaintiff's gastrointestinal impairment, rendering their opinions "stale." *Id.* at 10-11. The undersigned disagrees on both points.

### a. The physicians' alleged failure to consider relevant evidence.

When evaluating medical opinions, an ALJ must consider the extent to which the medical source provides "relevant evidence to support" his or her opinion. *See McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2013). This is particularly true for nonexamining sources. *Id.* However, the ALJ may give such opinions substantial weight when they are consistent with other evidence in the record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Plaintiff alleges the physicians ignored medical evidence on AR 247 (dated June 8, 2011), 373-74 (dated January 6, 2011), 379 (dated June 19, 2011), 383-84 (dated December 16, 2011), and 387-89 (dated February 9, 2012). Doc. 12, at 8. But the first reviewing physician considered the June 8, 2011, and January 6, 2011, records, AR 316, and the June 19, 2011 evidence revealed Plaintiff's abdominal symptoms were related to an "acute urinary tract infection." *Id.* at 379-80. That leaves only two relevant reports the physician did not specifically mention. In the first, Plaintiff presented to the emergency room with abdominal pain, "some loose stools," and "no vomiting." *Id.* at 383-84. In the second – almost two months later – Plaintiff presented to the emergency room with abdominal pain "with associated nausea and some vomiting" but no change in stool. *Id.* at 389.

These two isolated reports contain no specific diagnosis, demonstrate a severe impairment, or establish any physical limitations. In other words, these two reports are not inconsistent with the state agency physicians' opinions. And, because both nonexamining physicians supported their opinions with consistent medical evidence, *id.* at 316, 402, the ALJ was within his discretion to give the opinions great weight.

### b. The opinions' alleged staleness.

The undersigned agrees the state agency physicians issued their opinions based on evidence existing up to 2012, and Plaintiff's medical records continue until 2013. Ordinarily, an ALJ's reliance on "patently stale opinion[s]" would be "troubling." *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012). However, Plaintiff had to prove she was disabled *on or before* June 30, 2012. The state agency physicians' opinions were only relevant to the extent they opined her limitations *on or before that date.* Indeed, the "major changes" Plaintiff argues the physicians were unaware of occurred *after* her insured status requirements expired. *See supra* § V(A)(2), (3). Under such circumstances, the undersigned finds substantial evidence supports the ALJ's conclusion.

## B. Plaintiff's second proposition.

In her second proposition, Plaintiff claims the ALJ: (1) formulated Plaintiff's RFC without specific work-related limitations; (2) failed to incorporate into the RFC the state agency psychologist's opinion involving Plaintiff's "moderate" limitations; and (3) did not include all Plaintiff's limitations in his hypothetical question to the vocational expert (VE). Doc. 12, at 12-21. The undersigned finds no argument warranting reversal.

1. **The ALJ's alleged error in formulating Plaintiff's RFC without specific work-related limitations.**

Plaintiff begins her second proposition arguing the ALJ found Plaintiff had "severe" "mental disorder and degenerative disk disease" but "never undertook any analysis of what proper and actual 'limitations' the severe impairments might impose upon the RFC[.]" *Id.* at 12. According to Plaintiff, "the RFC is devoid of all of the proper limitations whatsoever." *Id.* Plaintiff explains the "ALJ confused mental work-related limitations with skill level when he expressed it as the ability to perform simple work[.]" *Id.* at 13. The undersigned finds Plaintiff's arguments patently incorrect.

At the outset, the undersigned concretely rejects Plaintiff's claim the ALJ "fail[ed] to include any limitation whatsoever in his RFC . . . ." *Id.* at 12. The ALJ absolutely included *numerous* exertional and nonexertional limitations, finding:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform "light work," as defined in 20 CFR 404.1567(b)[1], except that the claimant can only: occasionally climb, balance, stoop, kneel, crouch, and crawl; frequent, but not constant, reaching with the right upper extremity; understand, remember, and carry out simple and detailed, but not complex or involved, instructions; and have only incidental, superficial work-related type contact with the general public, co-workers, and supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed.

[1]*Light work.*  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  . . . .

AR 16.

Equally meritless are Plaintiff's claims the ALJ "confused mental work-related limitations with skill level when he expressed it as the ability to perform simple work . . . .," and "limitations in performing work arising from a mental impairment [are] not in the RFC."  Doc. 12, at 13, 15.  Although the ALJ ultimately found Plaintiff could perform several unskilled jobs, AR 19, his RFC assessment did *not* limit Plaintiff to "simple work" or "unskilled work"; instead, he acknowledged Plaintiff could "understand, remember, and carry out simple and detailed, but not complex or involved, *instructions.*"  *Id.* at 16 (emphasis added).  Plaintiff acknowledges that a limitation to only "understand, carry out, and remember simple instructions is a work-related mental function."  Doc. 12, at 16. (quoting, *Jaramillo v. Colvin,* 576 F. App'x 870, 874 (10th Cir. 2014)).  And, the RFC contains *multiple* mental function limitations.  The undersigned finds any argument to the contrary completely meritless.

## 2. The ALJ's alleged error in failing to incorporate the state agency psychologist's opinion into the RFC.

Plaintiff notes the ALJ gave the state agency psychologist great weight and then claims the psychologist opined Plaintiff was moderately limited in social functioning and concentration, persistence, and pace. *Id.* at 17. So, Plaintiff argues the ALJ had to incorporate those limitations into the RFC assessment. *Id.* at 17-18. Intertwined is Plaintiff's complaint the ALJ failed to incorporate the consultative examiner's opinion Plaintiff suffers from "panic attacks" and "it is likely that stress or pressure would exacerbate [Plaintiff's] symptoms, specifically her anxiety." *Id.* at 18, 20. The undersigned finds no reversal error.

The ALJ found at step three Plaintiff had moderate difficulties in social function but also noted Plaintiff's self-reporting she "socializes with others by visiting and playing cards" and "attending church and going to the coffee shop." AR 16. The ALJ likewise found Plaintiff had moderate difficulties in concentration, persistence, or pace, but noted Plaintiff's self-reporting she "could pay attention pretty good" and is "able to follow written and spoken instructions." *Id.* The ALJ then incorporated his findings into Plaintiff's RFC, holding she can "understand, remember, and carry out simple and detailed, but not complex or involved, instructions; and have only incidental, superficial work-related type contact with the general public, co-workers, and

supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed." *Id.* These limitations are in harmony with the state agency psychologist's opinion Plaintiff can: (1) "perform simple and some complex tasks"; (2) "relate to others on a superficial work basis"; and (3) "adapt to a work situation." *Id.* at 307. Plaintiff cites no evidence or medical opinion suggesting more restrictive limitations were required.[5]

The consultative examiner stated Plaintiff "seems to have poor coping abilities to manage her symptoms and it is likely that stress or pressure would exacerbate her symptoms, specifically her anxiety." *Id.* at 282. However, the examiner based this opinion on Plaintiff's self-reporting and noted Plaintiff was not "receiving any outpatient mental health treatment . . . ." *Id.* Also, it was Plaintiff – not the examiner – who reported panic attacks. *Id.* Nevertheless, the state agency psychologist reviewed this and other evidence, including evidence involving a panic attack, and opined Plaintiff is "capable of semi-skilled work," *id.* at 303, and can: (1) "perform simple and some complex tasks"; (2) "relate to others on a superficial work basis"; and (3) "adapt to a work situation." *Id.* at 307. Plaintiff does not

---

[5]     Plaintiff continues to argue the ALJ accounted for her mental impairments with a restriction to "simple, routine tasks" and equated her "emotional impairment" with "the lack of skill." Doc. 12, at 15, 18-19. The undersigned disagrees, finding the ALJ's RFC accounted for specific mental work-function restrictions.

15

challenge the ALJ's reliance on the state agency psychologist's opinion, and the undersigned finds the ALJ had no duty to incorporate further stress or panic attack-related work restrictions into the RFC.

Alternatively, the undersigned finds any error harmless. The ALJ gave the VE a hypothetical question mirroring Plaintiff's RFC and the VE testified such a claimant could perform several jobs. *See infra* § V(B)(3); AR 55-56; 56-58. The ALJ *also* asked the VE if the same claimant could perform the same jobs if she: (1) could follow only simple instructions; (2) could "deal with only occasional changes, work processes, and environment" (i.e., reduced stress); and (3) had no contact with the general public. AR 58. The VE testified affirmatively. *Id.* So, even if the court finds the ALJ should have included more restrictive limitations in Plaintiff's RFC based on her need to avoid detailed instructions and stress, the error would be harmless. *See Allen*, 357 F.3d at 1145.

> ### 3. The ALJ's alleged failure to include all Plaintiff's limitations in the hypothetical question to the VE.

In her final proposition-two argument, Plaintiff alleges "[i]n the hypothetical's [sic] given to the VE, the ALJ stated no mental health restrictions." Doc. 12, at 18. In particular, Plaintiff alleges the ALJ included no restrictions on "the ability to understand instructions or respond to work

pressures." *Id.* at 20. The undersigned finds the ALJ's hypothetical questions were legally sufficient.

An ALJ may properly rely on a VE's testimony if the hypothetical question adequately and precisely reflects the claimant's impairments and limitations but the questions "need only reflect impairments and limitations . . . borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *see also Alarid v. Colvin*, 590 F. App'x 789, 799 (10th Cir. 2014) ("The ALJ's hypothetical question to the VE must accurately reflect the 'impairments and limitations that were borne out by the evidentiary record.'" (citation omitted)).

Here, the ALJ asked the VE to consider a hypothetical claimant able to perform light work "as defined" with the ability to only occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 55. He went on:

> As to that right upper extremity, will only have frequent, not constant reaching with the right upper extremity, but here we'll go with understand, remember, and carry out simple and detailed, but not complex or involved instructions, and can only interact – have only superficial or incidental work-related type contact with the general public, with coworkers, with supervisor, by that I mean brief, succinct, cursory communication relevant to the task being performed.

*Id.* at 55-56. The VE stated such a hypothetical claimant could perform several jobs. *Id.* at 56-58. Then the ALJ asked:

Okay. So if this hypothetical individual could only understand, remember, and carry out simple instructions, make only simple work-related decisions, deal with only occasional changes, work processes, and environment, would that have any impact on these . . . jobs?

*Id.* at 58. The VE answered "No." *Id.* The ALJ then asked: "This hypothetical individual could have no contact with the general public, would that have any impact on these . . . jobs?" *Id.* Again, the VE replied "No." *Id.*

The ALJ's first hypothetical precisely reflected Plaintiff's limitations as assessed in her RFC and included those limitations borne out by the evidentiary record. The ALJ included specific mental-impairment functional limitations and was under no duty to include vague limitations based on stress or panic attacks. *See supra* § V(B)(1)-(2). And, the ALJ went one step further, giving the VE a hypothetical question that accounted for limitations in direction-following and stress. The undersigned finds substantial evidence supports the ALJ's hypothetical questions to the VE.

## C. Plaintiff's third proposition.

In her third proposition, Plaintiff states: "The ALJ did not conduct the required function-by-function assessment of [Plaintiff's] impairments or address the maximum amount of each work-related activity she could perform." Doc. 12, at 21. The undersigned finds no error.

With what sparse argument Plaintiff presents, it appears she believes the ALJ committed reversible error in finding simply she could perform light work without first describing in detail her abilities to sit, stand, walk, lift, carry, push, or pull. *Id.* (citing SSR 96-8p, 1996 WL 374184 (1996) ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). But the ALJ cited the physical requirements for light work, *see supra* § V(B)(1), and he gave great weight to the state agency physician who opined Plaintiff could: (1) "occasional lift and carry 20 pounds and frequently lift and carry 10 pounds"; and (2) "stand/walk and sit for a total of 6 hours each in an 8-hour workday." AR 18. The ALJ also discussed Plaintiff's daily activities, and discounted her credibility. *Id.* at 17.

Finally, Plaintiff "does not contend, nor could she, that it is unclear whether the ALJ found her capable of performing *all* the exertional demands of [light] work. Rather, she complains that the RFC is not in the proper form." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (emphasis in original). That is, Plaintiff cites no evidence she is incapable of performing the "sit, stand, walk, lift, carry, push, or pull" requirements of light work. *Id.*

So, the undersigned finds "the ALJ's failure to find explicitly that [Plaintiff] was capable of [performing the seven strength demands of light work] was not critical to the outcome of this case, and [Plaintiff] has not demonstrated error." *Id.* at 957 (citing *Keyes-Zachary*, 695 F.3d at 1166) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . . [W]e cannot insist on technical perfection.").

### D.     Plaintiff's fourth proposition.

Finally, in her fourth proposition, Plaintiff alleges the ALJ:   (1) "improperly considered [Plaintiff's] pain" allegations; and (2) "failed to account for [Plaintiff's] pain" in his RFC assessment. Doc. 12, at 22-23. The undersigned finds no grounds for reversal in either argument.

#### 1.     The ALJ's alleged failure to consider Plaintiff's pain.

According to Plaintiff, the ALJ "noted [her] assertions of pain but essentially rejected them by wholly failing to address them, despite finding that [she] suffered from multiple severe pain-inducing impairments." *Id.* at 22. Again, the undersigned finds Plaintiff's argument disingenuous.

The ALJ found Plaintiff had pain-producing impairments, AR 17, and specifically considered Plaintiff's pain allegations. He chronicled her testimony, including her allegations she: (1) "reported her shopping was limited due to pain"; (2) "reported right shoulder pain with heavy lifting"; (3) walked "with a limp due to back pain that radiated to her left leg with swelling"; and (4) "was generally up six times during the night due to back pain." *Id.* He then found Plaintiff was "not entirely credible," stating:

> [Plaintiff] reported severe back pain restricting her walking, standing and sitting abilities but lumbosacral spine x-ray showed normal bony mineralization, normal alignment, and normal vertebral heights with only small osteophytes present over L4 and L5 vertebra. Emergency department records noted [Plaintiff] denied back pain, muscle pain or joint pain.

*Id.* (internal record citations omitted).

Clearly, the ALJ did not "wholly fail[] to address" Plaintiff's pain allegations and Plaintiff does not otherwise criticize the ALJ's credibility assessment.

### 2. The ALJ's alleged failure to account for Plaintiff's pain in the RFC assessment.

Finally, Plaintiff alleges the ALJ "failed to account for [her] pain (disabling or otherwise) in formulating his RFC and determining what work, if any, [she] could perform with [her] level of pain." Doc. 12, at 23. But after assessing Plaintiff's pain allegations and her credibility, the ALJ limited her

to "light work" and found she could: (1) "only[] occasionally climb, balance, stoop, kneel, crouch, and crawl[]"; and (2) engage in "frequent, but not constant, reaching with the right upper extremity[.]" AR 16. Plaintiff identifies no other specific functional limitations the ALJ should have included in the RFC. So, again, substantial evidence supports the ALJ's decision and the undersigned finds no grounds for reversal. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she identifies no functional limitations that the ALJ should have included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)).

## VI.    Recommendation and notice of right to object.

The undersigned recommends the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 18th day of February, 2016, under 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The undersigned further advises the parties failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues

contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of January, 2016.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE